Mark ASBURY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–239C.

United States Court of Federal Claims.

Feb. 10, 1994.

Steven M. Angel, Oklahoma City, OK, for plaintiff.

Thomas D. Dinackus, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. Major Patricia Kerns, U.S. Air Force, of counsel.

## ORDER

NETTESHEIM, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. RCFC 12(b)(1), (4). Plaintiff has opposed, and argument is deemed unnecessary. The issue to be decided is whether plaintiff exhausted his administrative remedies before filing a complaint in the Court of Federal Claims.

## FACTS

The following facts derive from plaintiff's complaint, both parties' briefs, and the administrative record. Master Sergeant Mark Alan Asbury ("plaintiff") is a member of the United States Air Force Reserves. He seeks disability retirement status and pay and reimbursement for medical care received at a civilian hospital for an injury allegedly incurred during a tour of active duty. Plaintiff entered active duty in the United States Air Force in May 1973 and has continued in his enlisted status to the present, except for the period February 1983 to January 1984 when he separated from the Air Force.

Plaintiff was called to active duty service from August 7–18, 1989, at Sheppard Air Force Base, Texas. On August 14, 1989, while on active duty, plaintiff injured his knee when he descended a staircase. Plaintiff told the Safety NCO of his twisted knee. On August 16, 1989, plaintiff returned to his home in Lawton, Oklahoma, while still on active duty. As he entered his house, plaintiff lost his balance and fell, injuring his back. After this incident plaintiff returned to Sheppard Air Force Base to complete his active duty term. On August 17 plaintiff reported his fall to the Safety NCO. Plaintiff completed his active duty tour on August 18.

Plaintiff's back pain worsened over the next few days, and on August 22 he visited his personal physician, Dr. Robert Hay, in Lawton, Oklahoma. Dr. Hay considered that plaintiff might have pulled a muscle. When plaintiff's back pain did not improve, Dr. Hay referred plaintiff to Dr. Cecil J. Hash, a neurosurgeon, on October 10, 1989. Dr. Hash determined that plaintiff had herniated a disc and on October 24, 1989, plaintiff was operated on to remove the disc. Plaintiff's condition improved after the surgery but, on January 10, 1990, plaintiff was readmitted to Southwestern Medical Center suffering from severe leg pains. He was operated on to remove a second herniated disc on January 11, 1990.

Plaintiff, realizing the severity of his injury when Dr. Hay referred him to a neurosurgeon on October 10, 1989, notified his commander, Lt. Daniel J. Hetchler, of his injury. Plaintiff wrote and signed two memoranda for the record recounting the events of his knee injury, the later fall, and the medical care he had sought. Though neither of the memoranda is dated, one stated that plaintiff was scheduled for surgery on October 23, 1989, suggesting that plaintiff wrote that memorandum some time between October 10–23, 1989.

After his first disc operation, plaintiff on December 30, 1989, extended his enlistment for six months. After both disc surgeries, on June 5, 1990, plaintiff passed a reenlistment physical and was certified for worldwide duty. He extended his enlistment for nine months on June 30, 1991. Plaintiff reenlisted for an additional six years effective on March 3, 1991.

A "Line of Duty" ("LOD") investigation into plaintiff's August 16, 1989 back injury was ordered on December 13, 1991. The investigating officer, Captain Roy F. Jordan, determined in a report dated March 12, 1992, that the injury was incurred in the "Line of Duty", but this finding was disapproved by the appointing, reviewing, and approving authorities. Plaintiff requested that the Air Force reconsider its LOD determination, but his request was denied on September 3, 1992.

No indication appears that plaintiff ever requested a disability board or requested relief before the Air Force Board for the Correction of Military Records ("AFBCMR"). Plaintiff filed suit in the Court of Federal Claims on April 22, 1993.

## DISCUSSION

Defendant contends that this court lacks jurisdiction because plaintiff has failed to exhaust his administrative remedies under the two statutory provisions upon which plaintiff seeks relief.

■■■ When evaluating a motion to dismiss for subject matter jurisdiction and for failure to state a cause of action upon which relief can be granted, the allegations of the complaint should be construed favorably to the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,*

846 F.2d 746, 747 (Fed.Cir.1988). In *W.R. Cooper General Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988), the court stated: "In cases such as this in which a party has moved to dismiss for lack of jurisdiction, we must consider the facts alleged in the complaint to be correct. If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." (Citing *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1686; additional citations omitted.) However, the burden is on the plaintiff to establish jurisdiction. *Reynolds*, 846 F.2d at 748 (citing cases). In ruling on a motion to dismiss pursuant to RCFC 12(b)(1), the court is not limited to the face of the pleadings, but may consider extrinsic evidence. *Cedars–Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583–84 (Fed.Cir.1993); *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir.1985). Thus, in deciding on defendant's motion to dismiss, the court may look to the complaint, subsequent motions, and the administrative record.

Defendant argues that plaintiff's failure to request a disability board or to request relief from the Air Force Board for the Correction of Military Records precludes plaintiff from bringing a claim for disability retirement pay or separation under 10 U.S.C. §§ 1201–1221 (1988 & Supp. IV 1992). Defendant also argues that plaintiff cannot establish (1) that adequate medical care was unavailable from government sources and that he received authorization to obtain medical care from a non-government source prior to obtaining treatment, or (2) that the situation was a medical emergency; thus, he is precluded from bringing a claim for reimbursement for medical expenses incurred for treatment at a civilian hospital under Air Force Regulation ("AFR") 168–10 (Nov. 1988). Plaintiff's failure to exhaust the remedies provided by the Air Force regulations, defendant argues, negates the accrual of any cognizable claim and deprives the court of jurisdiction to hear his case.

■ 1. Members of the Air Force Reserves are entitled to be retired for disability and to receive disability retirement pay after they retire under 10 U.S.C. § 1204, provided that the Secretary of the Air Force determines that the member is unfit to perform his duties, the disability is the proximate result of performing active duty, and certain other conditions are met. Presumably, plaintiff claims entitlement to these benefits when he cites generally to 10 U.S.C. §§ 1201–1221 in his complaint. Plaintiff has not been retired from the Air Force Reserves under § 1204, nor has plaintiff sought a disability board. In fact, plaintiff passed his reenlistment physical in 1990 and has been approved for worldwide duty. It is well established that no claim for disability retirement pay or disability retirement status accrues until there has been a final decision or a refusal to act, upon request, by the proper board. *Friedman v. United States*, 159 Ct.Cl. 1, 24, 310 F.2d 381, 395–396 (1962), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

Furthermore, since plaintiff continues to be a member of the Air Force Reserves, he is subject to AFR 35–4 (June 1989), which requires concrete evidence of a disabling injury, such that the disability evaluation mechanism is set in motion. Under AFR 35–4 plaintiff is not entitled to apply for a disability retirement or discharge. Members are only referred to a Medical Evaluation Board as a result of examination, treatment, hospitalization, or substandard performance. AFR 35–4 ¶ 1–1. Plaintiff's certification for worldwide duty by the Air Force and his successful completion of his reenlistment physical in 1990 demonstrate that plaintiff's alleged injury is not so serious that it has triggered referral to a Medical Evaluation Board. Because such a triggering injury has not come to the attention of the appropriate Air Force officials, plaintiff has not embarked upon the path of the administrative remedies specified by AFR 35–4, the exhaustion of which is required before a claim accrues in the Court of Federal Claims. *See, e.g., Friedman*, 159 Ct.Cl. at 24, 310 F.2d at 395–396; *Dzialo v. United States*, 230 Ct.Cl. 506, 511, 677 F.2d 873, 875 (1982).

■ 2. Plaintiff claims that under 10 U.S.C. § 1074a (1988), he should receive payment for medical care and subsistence in connection with the treatment of his back

injury. Section 1074a provides that members of the uniformed services are entitled to receive medical care and subsistence during hospitalization for the treatment of injuries incurred: 1) in the line of duty or 2) while traveling directly to or from the place at which the member "is to perform or has performed" his active or inactive duty training. 10 U.S.C. § 1074a. The LOD investigation under AFR 35–67 determines whether the Air Force member was injured while performing active or inactive duty training, or whether the member was injured while traveling to or from active or inactive duty training—both events that will trigger the entitlement to benefits under section 1074a. AFR 35–67 ¶¶ 2–4, 2–5, 2–6 (Mar. 1988).

After plaintiff sought a LOD determination, the Air Force determined that plaintiff's back injury was not incurred in the line of duty. Plaintiff's request for a reinvestigation of the LOD determination was denied, and plaintiff was notified of his remedies by the proper Air Force authority in accordance with AFR 35–67 ¶ 4–2. Under AFR 31–3 plaintiff may apply to the AFBCMR to remedy any error or injustice in the LOD determination. Plaintiff must exhaust his administrative remedies by asking for relief from the AFBCMR before any claim in the Court of Federal Claims accrues.

The Air Force has promulgated more specific regulations governing the reimbursement of civilian medical expenses incurred to treat injuries received in the line of duty by Air Force members. *See* AFR 168–10 (Nov. 1988). Under AFR 168–10 a member of the Air Force Reserves is entitled to be reimbursed for non-military or non-government medical care for injuries received in the line of duty[1] (1) in an emergency, or (2) when military or other government medical care is not available and the member received authorization. AFR 168–10 ¶¶ 2, 4. Plaintiff does not allege that adequate medical care was unavailable at a military hospital and that he sought authorization for the care he received, or that he faced an emergency situation at the time, such that advance authorization was not required. The absence of any evidence

that plaintiff took the preliminary steps required by AFR 168–10 in order to obtain reimbursement for non-military medical expenses indicates that plaintiff has not fulfilled the most basic administrative requirements established by the Air Force regulations; until he does so, no claim under AFR 168–10 accrues.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss for lack of jurisdiction is granted. The Clerk of the Court shall enter judgment dismissing the complaint.

**IT IS SO ORDERED.**

---

1. There are several other limitations on the injuries, the non-military care for which reimbursement is permitted under AFR 168–10. *See* AFR 168–10 ¶¶ 2, 4.